IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON


PAUL D. PHILLIPS,

        Plaintiff,


v.                           Civil Action No. 2:04-cv-00856


JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.


## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  This case is presently pending before the court on Plaintiff's Motion for Summary Judgment and Defendant's Motion for Judgment on the Pleadings.  Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Paul D. Phillips, (hereinafter referred to as "Claimant"), filed an application for DIB on June 7, 2002, alleging disability during the period of January 1, 1997, through December

31, 1999, due to problems with his back, shoulder, high blood pressure, nervous condition, and past heart attack. (Tr. at 60-2, 82.)  The DIB claim was denied initially and upon reconsideration. (Tr. at 44.)  On January 21, 2003, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 51.) Claimant then filed for SSI on October 31, 2003. (Tr. at 205-7.)  The hearing was held on March 17, 2004 before the Honorable Timothy Pace. (Tr. at 284-315.)  By decision dated April 29, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-26.)  The ALJ's decision became the final decision of the Commissioner on June 18, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 5-8.)  On August 10, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R.

§§ 404.1520, 416.920 (2003).    If an individual is found "not disabled" at any step, further inquiry is unnecessary.    Id. §§ 404.1520(a), 416.920(a).    The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.    Id. §§ 404.1520(b), 416.920(b).    If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.    Id. §§ 404.1520(c), 416.920(c).    If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.    Id. §§ 404.1520(d), 416.920(d).    If it does, the claimant is found disabled and awarded benefits.    Id.    If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.    Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability.    Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).    The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.    20 C.F.R. §§ 404.1520(f), 416.920(f) (2003).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work

3

experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 15; Finding No. 2, tr. at 25.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of low back pain, mental retardation, and partial AC joint fracture. (Tr. at 20-1; Finding No. 3, tr. at 25.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 21; Finding No. 4, tr. at 25.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 23; Finding No. 6, tr. at 25.) As a result, Claimant cannot return to his past relevant work. (Tr. at 23; Finding No. 7, tr. at 26.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as a price marker, small parts assembler, hand packer, and assembler, which exist in significant numbers in the national economy. (Tr. at 24-5; Finding No. 12, tr. at 26.) On this basis, benefits were denied. (Tr. at 26; Finding No. 13.)

4

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In Blalock v. Richardson, substantial evidence was defined as

> evidence which a reasoning mind would accept
> as   sufficient   to   support   a   particular
> conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less
> than a preponderance. If there is evidence to
> justify a refusal to direct a verdict were the
> case before a jury, then there is 'substantial
> evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.   Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).   Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."   Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was 44 years old at the time of the administrative hearing.   (Tr. at 205, 286.)   He has a twelfth grade education, with the aid of special education classes.   (Tr. at 88.)   In the

5

past, he worked as a logger, a log scaler, and a lumber stacker. (Tr. at 83.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence, and will discuss it further below as necessary.

At the outset, the court notes the two relevant time periods corresponding to Claimant's applications: January 1, 1997 through December 31, 1999, which was the eligibility period for DIB; and October 31, 2003 forward, the period for Claimant's SSI claim. (Tr. at 19.)  Evidence prior to January 1, 1997 and evidence between December 31, 1999 and October 31, 2003 is briefly summarized for background information.

   1.   *Physical Impairments*

The records show that Claimant visited Richard Trenbath, M.D. and Chris Patriocski, M.D. as early as 1996 for respiratory problems including pneumonia, as well as medical management of his hypertension.  (Tr. at 165-9.)  The first visit during the relevant time period (DIB) occurred on April 7, 1997, at which time Dr. Trenbath prescribed antibiotics for Claimant's bronchitis and ear infection, and Vasotec for his hypertension.  (Tr. at 164.) Claimant continued to refill his Vasotec by requesting phone-in prescriptions until some time after May 1998, at which time Dr. Trenbath's office advised him that he needed to return for a follow-up appointment.  (Tr. at 160.)

6

Claimant, however, did not return to the office until November 23, 1998, at which time he sought a physical examination in connection with his driving test. (Tr. at 157-8.) Claimant stated that he needed this physical in order to drive a truck. The form instructed the physician to carefully examine the patient's extremities and to note all deformities, atrophy, semiparalysis or paralysis, and varicose veins. The form also directed that if the patient had hand or finger deformities, the physician should determine whether his/her grasp was sufficient to secure and maintain a grip on the steering wheel. If a patient had a leg deformity, the physician was to determine whether he/she had sufficient strength and mobility to properly operate pedals. The physician was told to note deformities, limitation of motion, or any history of pain, injuries, or disease, past or presently experienced in the patient's cervical or lumbar spine. (Tr. at 157.)

Dr. Trenbath opined that Claimant had a normal brief physical exam as specified by this form. He recorded no abnormalities in these areas, and commented only that Claimant was overweight, which was his "major problem." (Tr. at 156-8.) Dr. Trenbath diagnosed borderline hypertension and prescribed Ziac 2.5 mg, which he described as "the lowest dose." (Tr. at 158.)

Claimant did not visit Dr. Trenbath again until June 22, 1999, at which time he was suffering from chronic anxiety, problems with

7

a tooth, and poorly controlled hypertension. (Tr. at 155.) Dr. Trenbath prescribed more Ziac for hypertension and Xanax for anxiety. He also referred Claimant to another physician, presumably for treatment of his anxiety. (Tr. at 155.)

Claimant visited Dr. Trenbath again on August 2, 1999, following an accident in which his log truck overturned. (Tr. at 152.) Claimant, who was riding in the truck, was knocked unconscious but did not present to the emergency room until the following day. Claimant had multiple contusions and bruises, and had limited range of motion in his neck. His entire back was tender and his straight leg raising test was positive. Dr. Trenbath advised Claimant to continue the medications prescribed in the emergency room, and to keep fairly active to work out his soreness. (Tr. at 152.)

Claimant did not re-visit Dr. Trenbath again during the DIB time period, but phoned in requesting refills on his prescriptions. (Tr. at 150-1.) During the time between Claimant's eligibility for DIB and his SSI application, Claimant visited Dr. Trenbath for low back and leg complaints, as well as complications from a previous acromioclavicular dislocation. (Tr. at 264.) Dr. Trenbath prescribed medications.

On November 26, 2002, Claimant returned to Dr. Trenbath with continued complaints of back and shoulder pain. (Tr. at 264.) Claimant indicated that he had gone back to work, but that he had

8

been unable to continue.  Dr. Trenbath diagnosed low back pain and AC joint separation of Claimant's right shoulder with limited range of motion in his right arm.  An MRI showed minor degenerative disc disease without evidence of neural compression.  Dr. Trenbath refilled Claimant's medications and restricted him from heavy lifting.  He recommended that Claimant find light duty work or undergo rehabilitation. (Tr. at 264.)

Thereafter exists a gap in Claimant's medical treatment until July 2002, the first date within the SSI time frame.  Claimant submitted no records corresponding to the SSI claim at the hearing level, but instead presented all evidence to the Appeals Council.

During 2002 and 2003, Claimant visited Dr. Trenbath for treatment of his right AC joint separation, chronic low back pain, and management of his anxiety.  (Tr. at 253-71.) On February 16, 2004, Claimant visited Dr. Trenbath with a swollen right leg. (Tr. at 251.)  He had been hospitalized for five days. He limped and complained of great pain.  Dr. Trenbath diagnosed deep vein thrombosis (DVT) and gave Claimant a shot of Toradol. (Tr. at 251.)

On March 1, 2004, Dr. Trenbath examined Claimant's right leg and found that it was still swollen due to the clot.  Dr. Trenbath diagnosed extensive deep vein thrombosis with pitting edema and chronic low back pain. (Tr. at 249.)  Claimant's symptoms continued and worsened to some degree throughout March, until March 29, 2004, at which time Dr. Trenbath recorded that Claimant's leg was not as

swollen as before.  (Tr. at 245.)  At his final visit with Dr. Trenbath on April 6, 2004, Claimant did not report any right leg swelling.  He moved about stiffly and had low back tenderness and pain.  Dr. Trenbath noted that Claimant was overusing his medications, and admonished him to only take the prescribed amount. (Tr. at 242.)

Additional evidence presented to the Appeals Council included a January 18, 2004 emergency room report documenting Claimant's acute myocardial infarction.   (Tr. at 209-13.) Claimant was transported to the hospital via ambulance after burning chest pain of one day's duration, shortness of breath, and right arm numbness. (Tr. at 209.)  He reported taking only Xanax and blood pressure medications.  (Tr. at 209.)   These records include Claimant's abnormal echocardiogram. (Tr. at 222.)  It does not appear from the record that Claimant was admitted to the hospital.

   2.  *Mental Impairments*

Claimant graduated high school with the aid of special education classes which commenced in the fourth grade.  (Tr. at 21, 88.)  According to Claimant, upon graduation, the high school principal informed him and his father that Claimant actually only had a fourth-grade education.  (Tr. at 302.)  Claimant took his driver's test orally.   (Tr. at 302.) Commensurate with this background, testing by licensed clinical psychologist Drema Baker, M.A. in May, 2001 yielded an IQ score of 52, within the moderately

10

mentally retarded range. (Tr. at 121.) According to Ms. Baker's report, this score has a mental age equivalent of eight years, four months. (Tr. at 121.) Claimant had difficulty responding to questions such as how many days were in a week and how many inches were in one foot or two feet. Ms. Baker opined that he was lacking in academic skills, was illiterate, and had demonstrated a past inability to manage his own financial affairs. (Tr. at 121.) The record shows that while Claimant had his own logging business for a time, all finances and paperwork were managed by his wife. (Tr. at 121.) Following his divorce, Claimant's business was terminated by the state due to tax issues. Ms. Baker opined that Claimant's capacity for employment was extremely limited. (Tr. at 121.)

Claimant took Xanax as prescribed by Dr. Trenbath during the relevant DIB and SSI periods for chronic anxiety. (Tr. at 152-5; 149-50; 242-54.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred (1) in failing to properly weigh the evidence pertaining to Claimant's pain and credibility, and (2) in failing to consider Claimant's impairments in combination. He also argues that the Commissioner's decision was not supported by substantial evidence. (Pl.'s Br. at 13-7.) The Commissioner responds that the ALJ properly evaluated Claimant's pain and credibility, that the impairments were duly

11

considered in combination, and that the decision was supported by substantial evidence in all respects.  (Def.'s Br. at 8-19.)

1.   *Pain and Credibility*

A two-step process is used to determine whether a claimant is disabled by pain.  First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged.   20 C.F.R. §§ 404.1529(b) and 416.929(b) (2003); SSR 96-7p, 1996 WL 374186 (July 2, 1996); <u>see also</u>, <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996).  If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated.   <u>Craig</u>, 76 F.3d at 595.  A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(2003).  Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;

12

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3)(2003).

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the

13

entire case record.

SSR 96-7p, 1996 WL 374186, at *2.  Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the regulations.

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself.  Craig, 76 F.3d at 585, 594; SSR 96-7p, 1996 WL 374186, at *2 ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record").  Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision.

In this case, the ALJ determined that Claimant suffered from the severe impairments of chronic low back pain, partial AC joint fracture, and mental retardation.  (Tr. at 21; Finding No. 3, tr. at 25.)  He specifically acknowledged that he must consider all symptoms, including pain, and the extent to which these symptoms

14

could reasonably be accepted as consistent with objective medical evidence and other evidence based on 20 C.F.R. § 404.1529 and 416.929, and SSR 96-7p. (Tr. at 21.) After reciting the two-step analysis above, the ALJ examined Claimant's subjective complaints, and found that Claimant was not fully credible. (Tr. at 22.) The ALJ first noted that the Claimant alleged that his pain was a "4" on a scale of 1 to 10 when he testified at the hearing. (Tr. at 22, citing tr. at 307.) Despite his alleged upper extremity problems, Claimant admitted that he could make a fist, tie his shoes, fix a sandwich, turn pages, pinch, pick up coins, and shampoo his hair. Claimant lived alone in a trailer and attended to his own personal needs, prepared simple meals, and washed dishes. He cleaned house and drove once a week. (Tr. at 22, citing tr. at 296-8.) He administered his own medication, understood television programs, and got along with other people. (Tr. at 22, citing tr. at 299.) He denied psychiatric problems. (Tr. at 22, citing tr. at 298.) He indicated that he might be able to do a night watchman job, if he were permitted to sit and stand as needed. (Tr. at 22, citing tr. at 301-2.) The ALJ also noted that Claimant injured himself on one occasion while working on a roof, which raised doubts as to the extent to which his dizziness affected him. (Tr. at 22, citing tr. at 130.)

The ALJ observed likewise that the medical evidence did not correlate with Claimant's complaints. (Tr. at 22-3.) Claimant did

not take any regular pain medications at the time of his DIB application. (Tr. at 20, citing tr. at 87.) The Claimant's MRI showed only minor degenerative disc disease of the lumbar spine, and the x-rays did not show a compression fracture or ruptured disc. (Tr. at 23, citing tr. at 140-3.) The ALJ noted that Dr. Trenbath had indicated a normal brief physical examination in November 1998, indeed certifying that Claimant could drive a truck. (Tr. at 23, citing tr. at 156-8.) As the Commissioner points out, Claimant's records further indicate that Claimant was working during the relevant DIB period. (Tr. at 152, indicating "[Claimant] was riding in his log truck when it overturned.") Yet even following this injury, Dr. Trenbath did not restrict Claimant from working or any other activity; instead, he advised Claimant to keep fairly active to work out the soreness from his injury. (Tr. at 152.)

Claimant supports his pain argument only with records from the period between his two disability claims. (Pl.'s Br. at 14, citing records between January 1, 2000 and October 30, 2003.) These records do not demonstrate that Claimant was disabled during an eligible period. Moreover, Claimant advances no evidence tending to show how his pain impacted his functional abilities.

The ALJ properly performed the pain and credibility analysis above and his decision was supported by substantial evidence in this respect.

2.   *Combination of Impairments*

The social security regulations provide,

> In determining whether your physical or mental
> impairment or impairments are of a sufficient
> medical severity that such impairment or
> impairments could be the basis of eligibility
> under the law, we will consider the combined
> effect of all of your impairments without
> regard to whether any such impairment, if
> considered separately, would be of sufficient
> severity.

20 C.F.R. §§ 404.1523, 416.923 (2003). Where there is a
combination of impairments, the issue "is not only the existence of
the problems, but also the degree of their severity, and whether,
together, they impaired the claimant's ability to engage in
substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396,
398 (4th Cir. 1974). The ailments should not be fractionalized and
considered in isolation, but considered in combination to determine
the impact on the ability of the claimant to engage in substantial
gainful activity. Id. The cumulative or synergistic effect that
the various impairments have on claimant's ability to work must be
analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

Claimant argues that the ALJ failed to consider his
impairments in combination pursuant to these authorities. A review
of the decision, however, reveals that the ALJ undertook a careful
analysis.

The ALJ thoroughly summarized of all of Claimant's medical
records, including those outside the eligibility periods. (Tr. at

17

16-8.)  He noted the regulation requiring Claimant to show an impairment or combination of impairments that was severe, as well as the regulation requiring an ALJ to consider all medically determinable impairments in the remaining steps of the analysis if a severe impairment is found.  (Tr. at 19, <u>citing</u> 20 C.F.R. §§ 404.1523 and 416.923.)

The ALJ made specific determinations as to Claimant's mental impairments, hypertension, anxiety, cardiac problems, low back pain, and shoulder fracture.  (Tr. at 20-1.)  He then concluded that the record did not "reflect *a combination of impairments* that imposes such functional limitations as to be equal in severity to any section of [the Listed Impairments.]" (Tr. at 21, emphasis added.)

Finally, the ALJ clearly accommodated Claimant's impairments in combination in his residual functional capacity assessment.  He limited Claimant to light work due to his back and shoulder impairments.  He further restricted Claimant to simple, routine tasks in which sustained concentration and attention were not required.  (Tr. at 23.)  The ALJ restricted Claimant from reaching overhead with his right arm in the latter period due to his shoulder complaints, and further restricted him from heights or steps due to dizziness.  (Tr. at 23.)  As such, it is clear that the ALJ fairly considered all of Claimant's verifiable impairments, and indeed accounted for their combined effect upon him.

18

The court finds that the Commissioner's decision was supported by substantial evidence in this regard.

3.  *Substantial Evidence*

Claimant's final argument is a generalized assertion that the Commissioner's decision was not supported by substantial evidence. (Pl.'s Br. at 16-7.)  For reasons below, the court concludes that the ALJ's decision was not supported by substantial evidence, and that remand is appropriate.

Claimant's Slosson Intelligence Test yielded an IQ score of 52.  (Tr. at 121.)  The ALJ, however, opined that this test result might be invalid, due to the fact that Claimant had a "stable work history, including owning his own business", and the facts that Claimant lived alone, cleaned house and prepared simple meals for himself.  (Tr. at 21.)  The ALJ stated that for these reasons, he would not find that the Claimant met the threshold requirement of section 12.05: a valid verbal, performance, or full scale IQ score of 70 or less.  (Tr. at 21.)

The court finds that the ALJ's decision in this regard was not supported by substantial evidence.  First, licensed psychologist Drema Baker, who administered the intelligence test, did not report any indications that the test was invalid. (Tr. at 121.)  Rather, Claimant's score in the moderately mentally retarded range was consistent with the rest of the record.  Claimant was in special education classes since the fourth grade.  (Tr. at 118.)  According

19

to Claimant, his high school principal indicated that although he graduated, Claimant had only a fourth grade education.  (Tr. at 302.) Claimant cannot read, never buys a newspaper, and threw his food stamps away, apparently not understanding their purpose. (Tr. at 118.)  While the ALJ portrays Claimant as a businessman, the record does not support this.  Claimant testified that with respect to his business, he just worked the power saw.  (Tr. at 299.)  His foreman took care of the sales.  (Tr. at 299.) Claimant's wife managed the finances and paperwork necessary to run the business. (Tr. at 120.)  Consistent with this, within the same year that Claimant and his wife divorced, the state put the company out of business due to tax problems.  Ms. Baker opined that given Claimant's intelligence, he likely did not comprehend how taxes were to be handled, or even that they were owed. (Tr. at 121.) Moreover, Claimant testified that his mother does the grocery shopping for him, (tr. at 297), his understanding "fades in and out" when he is watching television, (tr. at 298), and his anxiety prevents him from driving a commercial vehicle (tr. at 300-1). He is unable to fix things at his trailer and depends upon family members to do this and to make his house payments.  (Tr. at 305-6.)

The court notes that Ms. Baker's report was dated May 26, 2001, which falls between the two eligibility periods. (Tr. at 118.)  However, intelligence scores indicating moderate mental retardation in a 40-year old man are not likely to fluctuate

sizeably. Claimant's intelligence and level of education were constant during the periods in question, as was his remote work history.

Accordingly, the court finds that the ALJ's decision as to the degree of Claimant's mental impairment and mental functional capacity was not supported by substantial evidence, and that remand is appropriate. The court notes further that the medical evidence relating to Claimant's SSI claims were not considered at the hearing level, and directs that those items contained in Exhibit AC-1 and AC-2 (tr. at 209-71) be considered on remand as well. These include records from Summersville Memorial Hospital and Camden on Gauley Medical Center.

The Commissioner raises the issue of a remand pursuant to the sixth sentence of § 405(g). Because the court finds that remand is appropriate under sentence four, it does not address this issue.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is not supported by substantial evidence.  Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment is **GRANTED**, Defendant's Motion for Judgment on the Pleadings is **DENIED**, this matter is **REVERSED** and **REMANDED** for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and this matter is **DISMISSED** from the docket of this court.

The Clerk of this court is directed to provide copies of this written Opinion and Order to all counsel of record.


**ENTER:** August 24, 2005.


Mary E. Stanley
United States Magistrate Judge

22